# NO. 24-2103

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

NATHANIEL SILVA and PHIL ROTHKUGEL,
on behalf of themselves and all others similarly situated

Plaintiff-Appellants,

v.

SCHMIDT BAKING DISTRIBUTION, LLC
and SCHMIDT BAKING COMPANY, INC.

Defendant-Appellees,

INTERLOCUTORY APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT
Honorable Michael P. Shea, Presiding
District Court Case No. 3:23-CV-01695-MPS

**DEFENDANT-APPELLEES' REPLY
IN SUPPORT OF MOTION TO STAY MANDATE**

LITTLER MENDELSON, P.C.
William J. Anthony, Esq.
900 Third Avenue
New York, NY 10022
Tel: 212.583.9600
wanthony@littler.com

Joshua B. Waxman
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
Tel: 202.789.3406
jwaxman@littler.com

Michael S. McIntosh
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
Tel. 703.442.8425
mmcintosh@littler.com

Robert F. Friedman
2001 Ross Avenue, Suite 1500
Dallas, TX 75201-2931
Tel. 214.880.8100
rfriedman@littler.com

***Attorneys for Defendant-Appellees***

# TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION**................................................................................1

**ARGUMENT**...................................................................................3

    I.      Plaintiff-Appellants' Proposed Legal Standard Relates to Decisions About Whether to Stay a Lower Court Order, Not Stays of Mandate. ................................................................3

    II.     Plaintiff-Appellants' Observation About the Recent Number of FAA Section 1 Cases Before the Supreme Court Supports Schmidt's Argument. ..........................................................6

    III.    Plaintiff-Appellants Misapprehend the Public Interest Implicated Here. ........................................................8

    IV.    Plaintiff-Appellants' Speculation as to the Extent of District Court Proceedings While Schmidt's Cert Petition Is Considered Does Not Support Denial of the Motion to Stay. ...............................9

**CONCLUSION**................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Exp. Merchants Litig.*,
    681 .3d 139, 141, 149 (2d Cir. 2012), *cert. granted sub nom.*
    *Am. Exp. Co. v. Italian Colors Rest.*, 568 U.S. 1006 (Nov. 9,
    2012), *rev'd*, 570 U.S. 228 (2013); ........................................................1

*Amos v. Amazon Logistics, Inc.*,
    2022 WL 2181448 (M.D.N.C. June 16, 2022), *aff'd*, 74 F.4th 591 .....................7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)........................................................................8

*Bissonnette v. LePage Bakeries Park St., LLC*,
    601 U.S. 246 (2024).......................................................................6

*Washington v. Bridgestone Retail Operations, LLC*,
    2024 WL 4793070 (D. Md. Nov. 14, 2025)...........................................9

*Brock v. Flower Foods, Inc.*,
    121 F.3d 753 (10th Cir. 2024) ..........................................................6

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023)......................................................................10

*Delisle Sales Grp., LLC v. House of Wu, LLC*,
    2020 WL 7699852 (D. Conn. Dec. 28, 2020) .......................................9

*State of Fla. v. Dep't of Health & Hum. Servs.*,
    19 F.4th 1271 (11th Cir. 2021) .........................................................4

*Doe #1 v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) ......................................................4, 5

*Flower Foods, Inc. v. Brock*,
    No. 24-935 (U.S.) ..........................................................................6

*Khulumani v. Barclay National Bank, Ltd.*
    509 F.3d 148 (2d Cir. 2007) .........................................................5, 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................8

*New Prime Inc., Petitioner v. Dominic Oliveira, Respondent*,
  2018 WL 4776174 (U.S. Oral Arg., Oct. 3, 2018) ...............................2

*New Prime Inc. v. Oliveira*,
  586 U.S. 105 (2019).................................................................1, 2, 6, 7

*Nken v. Holder*,
  556 U.S. 418 (2009).......................................................................3, 4, 5

*Oliveira v. New Prime, Inc.*,
  857 F.3d 7 (1st Cir. 2017)....................................................................7

*Sarah Car Care v. LogistiCare Sols.*,
  2023 WL 5378845 (3d Cir. Aug. 22, 2023) .......................................10

*Southwest Airlines Co. v. Saxon*,
  596 U.S. 450 (2022)..............................................................................6


**Statutes**

All Writs Act, 28 U.S.C. § 1651(a)...........................................................3

Maryland Uniform Arbitration Act............................................................9


**Other Authorities**

Fed. R. App. P. 41.......................................................................................5

Fed. R. App. P. 41(d) .................................................................................2

Fed. R. App. P. 41(d)(1)......................................................................3, 5, 6

Fed. R. App. P. 41(d)(2)..........................................................................3, 5

JAMS Employment Rules, R. 17(a)-(b), (e)
  (https://www.jamsadr.com/rules-employment-arbitration)...............10

iii

## **INTRODUCTION**

Plaintiff-Appellants' Opposition (Dkt. 84.1, "Opp'n") to the Motion to Stay Mandate (Dkt. 83.1, "Mot. to Stay") filed by Defendant-Appellees Schmidt Baking Distribution, LLC and Schmidt Baking Company, Inc. (collectively "Schmidt") is as notable for what it does not say as what it does say. Plaintiff-Appellants' brief, *inter alia*:

(1)  Ignores the two Second Circuit arbitration cases in which the Second Circuit granted a stay of its mandate, including one in which this Court could not agree about whether a Circuit split existed, *see* Mot. to Stay 7-8, discussing *In re Am. Exp. Merchants Litig.*, 681 .3d 139, 141, 149 (2d Cir. 2012), *cert. granted sub nom. Am. Exp. Co. v. Italian Colors Rest.*, 568 U.S. 1006 (Nov. 9, 2012), *rev'd*, 570 U.S. 228 (2013);

(2)  Does not dispute that the first question to be presented in Schmidt's forthcoming petition for writ of certiorari, *see* Mot. to Stay 3-4, was not reached by the Supreme Court in *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019);

(3)  Does not address Schmidt's second question to be presented to the Supreme Court, *see* Mot. to Stay 4, and whether it presents a substantial question creating good cause for a stay;

1

(4)     Does not dispute that during the *New Prime Inc.* Supreme Court oral argument "at least three Justices indicated that they had concerns about the applicability of the Section 1 exemption where the contracting entities were both businesses," *see id*. at 6; and

(5)     Does not dispute that the worker's counsel in *New Prime Inc.* (whose organization is one of the instant Plaintiff-Appellants' amici curiae) conceded that "independent contractors who are businesses would not fall within the [Federal Arbitration Act Section 1 transportation worker] exemption … [b]ased on the text of the exemption," *see id*. at 5, quoting *New Prime Inc., Petitioner v. Dominic Oliveira, Respondent*, 2018 WL 4776174, at *41-42 (U.S. Oral Arg., Oct. 3, 2018).

These omissions and concessions are sufficient to establish under Fed. R. App. P. 41(d) that Schmidt's forthcoming petition for writ of certiorari will present at least one "substantial question"—the term used by Fed. R. App. P. 41(d) (along with "good cause") to explain when a stay of mandate is appropriate that is curiously absent in Plaintiff-Appellants' Opposition.

Indeed, rather than focusing on the Fed. R. App. P. 41(d) "substantial question" and "good cause" standards, Plaintiff-Appellants borrow standards applicable to "[a]n appellate court's power to hold an order in abeyance while it

2

assesses the legality of the order," pursuant to its "inherent" authority "preserved in the grant of authority to federal courts" in the All Writs Act, 28 U.S.C. § 1651(a). *See* Opp'n 3; *Nken v. Holder*, 556 U.S. 418, 426 (2009). The *Nken* standard, however, is not applicable here and Plaintiff-Appellants cite no authority from any circuit court applying it to a motion to stay mandate. But even applying Plaintiff-Appellants' proposed standard, this Court still should grant Schmidt's Motion to Stay because Plaintiff-Appellants' are wrong about the likelihood of Schmidt's petition being granted, wrong about the public's interest in the issuance of a stay, and wrong about the harm Schmidt will suffer if the mandate is not stayed.

## ARGUMENT

### I. Plaintiff-Appellants' Proposed Legal Standard Relates to Decisions About Whether to Stay a Lower Court Order, Not Stays of Mandate.

Plaintiff-Appellants argue that "[a]lthough Federal Rule of Appellate Procedure 41(d)(1) provides the procedural mechanism for granting a stay of a mandate, courts generally apply the traditional stay factors as articulated by the Supreme Court in" *Nken*, *supra*. *See* Opp'n 3 (citation omitted). Yet unsurprisingly they cite no decisions where a Circuit Court of Appeals applied *Nken* to a motion to stay its mandate.

Fed. R. App. P. 41(d)(2) is more than a "procedural mechanism"—it sets forth a two-part *substantive* standard for when a Circuit Court of Appeals may, in its discretion, stay issuance of its *own* mandate pending the filing of a petition for writ

3

of certiorari with the Supreme Court, *i.e.*, whether the cert petition will present a "substantial question" and there is "good cause" for the stay. Neither of the non-Second Circuit cases cited by Plaintiff-Appellants in support of using the "traditional stay factors" concerned a motion to stay mandate. *See* Opp'n 3 (citing *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1301 (11th Cir. 2021) (applying *Nken* factors); *Doe #1 v. Trump*, 957 F.3d 1050, 1058-59 (9th Cir. 2020) (same). In fact, those cases present entirely different exercises of judicial power.

In *State of Florida*, a district court denied a motion for preliminary injunction to enjoin an interim COVID-19 vaccine rule promulgated by the Secretary of Health and Human Services. The State appealed the order and, in the Eleventh Circuit, moved to stay the ***district court's*** order pending appeal. 19 F.4th at 1275; *see also id*. at 1279 ("we examine the district court's decision to deny a preliminary injunction for abuse of discretion").

*Doe #1 v. Trump* similarly did not involve a motion to stay an appellate court's mandate. Rather, in the Ninth Circuit, the defendant filed motions for an emergency temporary stay and for a stay pending appeal from a ***district court's*** nationwide preliminary injunction enjoining a Presidential Proclamation related to entry under immigrant visas. *See* 957 F.3d at 1056-58 (relying on *Nken* factors).

In *Nken v. Holder*, 556 U.S. at 422-23, after losing before the Board of Immigration Appeals, the petitioner filed in the Fourth Circuit motions to review a

4

removal order by the Board and reopen proceedings. The Supreme Court's discussion makes clear the issue presented was "the standard a court should apply in deciding whether" to prevent an order of removal *issued by the Board of Immigration Appeals* "from taking effect . . . while adjudicating the petition." *Id*. at 425. In other words, the case involved the "traditional" stay of a *lower judicial authority's order* pending review by the court being asked to grant the stay. That is not the situation here and, thus, the *Nken* factors do not apply.

While Plaintiff-Appellants correctly identify the four factors applied in *State of Florida* and *Doe #1* (and in *Nken*), this Court is not being asked to enjoin *a lower judicial authority* (*i.e.*, a federal district court or, in the case of *Nken*, the Board of Immigration Appeals). Rather, Schmidt requests that this Court temporarily withhold its own mandate for the limited period described in Fed. R. App. P. 41(d)(2), pending the filing of a cert petition and under the *specific legal standards set forth therein* (*i.e.*, the "substantial question" and "good cause" requirements).

Regarding such a circumstance, this Court's analysis in *Khulumani v. Barclay National Bank, Ltd.* is instructive. The majority opinion there correctly identified the two prongs of Fed. R. App. P. 41(d)(1)[1] and then determined the issue presented had

---

[1] At that time, the current Rule 41(d)(1) was numbered as Rule 41(d)(2)(A). *See* Fed. R. App. P. 41, Comm. Notes – 2018 Amend. (describing amendment of subdivision (d)).

not been "sufficiently developed as to be fit for review by the Supreme Court," thus not reaching the "good cause" prong. *See* 509 F.3d at 152. Judge Korman's dissenting opinion demonstrates a full Fed. R. App. P. 41(d)(1) analysis, divided into two sub-parts: "substantial question" (*id*. at 153-55) and "good cause (*id*. at 155-56).

## II. Plaintiff-Appellants' Observation About the Recent Number of FAA Section 1 Cases Before the Supreme Court Supports Schmidt's Argument.

Plaintiff-Appellants argue it is "not likely" Schmidt's petition will be granted by the Supreme Court because it has already decided three other FAA Section 1 cases since 2019 and will hear arguments on a fourth later in this term. (Opp'n 1.) In fact, the Supreme Court has taken numerous arbitration cases beyond these four most recent cases in the last two decades. But none of those other cases raised or decided the questions presented here.[2] And contrary to Plaintiff-Appellants' suggestion, the frequency with which the Supreme Court has taken up petitions

---

[2] *See New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) (contract between company and independent contractor worker to perform work is "contract of employment"); *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) (supervisor who frequently loads and unloads airline cargo is Section 1 transportation worker); *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024) (worker need not work in transportation industry to fall within Section1). Similarly, *Flower Foods, Inc. v. Brock*, No. 24-935 (U.S.) will not decide the issue presented in this case because the defendant there waived the "contract of employment" issue by not raising it in the district court. *See Brock v. Flower Foods, Inc.*, 121 F.3d 753, 761, 770 (10th Cir. 2024) (declining to review whether distribution agreement qualifies as a "contract of employment). Plaintiff-Appellants do not contend otherwise.

6

concerning the meaning of the FAA and, in particular, the scope of the Section 1 exemption shows the Court has been and remains keenly interested in these issues.

In fact, Plaintiff-Appellants ignore that three current justices asked questions at length during the oral argument in *New Prime Inc*. about the exact FAA Section 1 issue decided by this Court. (*See* Mot. to Stay 4-6.) But the decision in *New Prime Inc*. ultimately did not address the instant issue of whether a business-to-business agreement can constitute a "contract of employment" for purposes of Section 1.[3] *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 10 n.4 (1st Cir. 2017) (unlike in this case, "Prime has [] treated the contract as one between Prime and Oliveira," *i.e.*, a contract between itself and the individual worker, rather than with his company). This case presents an opportunity to settle a question that was very much on the Court's mind seven years ago.[4]

---

[3] Further, Plaintiff-Appellants' argument that the *New Prime* "facts are essentially on all fours with the contract at issue in this case" could not be farther from the truth contained in the record – the *New Prime* contract did not involve the sale of distribution rights from one corporate entity to another, did not provide the worker an opportunity to expand a sales area or acquire additional territories, and did not permit the distributor the opportunity to realize equity gains in the value of such distribution rights (or expose him to risk of loss of equity). *See* Mot. to Stay 4, 8-9.

[4] Plaintiffs incorrectly assert that *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591 (4th Cir. 2023) was "brought by individual workers." (*See* Opp'n at 1-2, 6.) One of the *Amos* claims brought by the named plaintiff was under the Fair Labor Standards Act to recover "unpaid wages and overtime compensation"—"both for the hours she worked personally and for the hours of her drivers, which she had to pay through Kirk Amos LLC." *See Amos*, 74 F.4th at 597; *Amos v. Amazon Logistics, Inc.*, 2022 WL 2181448, at *1 (M.D.N.C. June 16, 2022), *aff'd*, 74 F.4th 591; *Amos*, Dkt. 1,

## III. Plaintiff-Appellants Misapprehend the Public Interest Implicated Here.

Plaintiff-Appellants argue that "the public interest in this matter does not favor any type of stay," Opp'n 2, and "the public interest will not be affected one way or another by the denial of a stay, *id*. 4 (decapitalized). The only purported public interest they identify, however, is Connecticut's alleged interest in seeing its "strong independent contractor classification test" statute enforced. *Id*. 4. The instant appeal, however, does not concern questions of independent contractor classification—it is about the enforceability of an arbitration agreement under the FAA. If anything, private arbitration is likely to resolve the underlying merits question of whether Plaintiff-Appellants were misclassified with "lower costs" and "greater efficiency and speed" than litigation in federal court, thus actually serving the purported public interest presented by Plaintiff-Appellants. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011).

Absent from Plaintiff-Appellants' analysis, however, is any mention of (1) the "congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); or (2) Connecticut's and Maryland's public policies similarly favoring

---

Compl. ¶¶ 195-214. In any event, Plaintiff-Appellants cannot and do not assert that Schmidt's petition can only be granted if a Circuit split exists.

8

enforcement of arbitration agreements.[5] These are the true public interests implicated here and would be undermined if the mandate were issued, and litigation recommence, before the district court, before the Supreme Court has had the opportunity to weigh in on the propriety of arbitration pursuant to the FAA in this matter. In short, the public interest at both the federal and state levels is best served by a stay of the mandate pending Schmidt's petition for writ of certiorari.

**IV.  Plaintiff-Appellants' Speculation as to the Extent of District Court Proceedings While Schmidt's Cert Petition Is Considered Does Not Support Denial of the Motion to Stay.**

Plaintiff-Appellants asserts there will no irreparable or undue harm to Schmidt if the motion to stay is denied, because "the only activity" in the district court "most likely" will be "a preliminary scheduling conference, a discovery schedule, and some paper discovery," which "will be relevant even if the Parties were compelled to arbitration." *See* Opp'n 2, 4. This is pure, unsubstantiated speculation, particularly since the district court must still resolve issues regarding the enforceability of the arbitration agreements under the Maryland Uniform Arbitration Act (which does not include a transportation worker exemption) and the enforceability of the class waiver

---

[5] *See Washington v. Bridgestone Retail Operations, LLC*, 2024 WL 4793070, at *5 (D. Md. Nov. 14, 2025) ("courts have recognized Maryland has a 'public policy favoring' arbitration agreements") (citation omitted); *Delisle Sales Grp., LLC v. House of Wu, LLC*, 2020 WL 7699852, at *5 (D. Conn. Dec. 28, 2020) ("Connecticut … favor[s] the enforcement of arbitration agreements as a matter of public policy.") (citation omitted).

9

in the Distribution Agreement if arbitration is not compelled. "[R]equiring the parties to undergo full discovery," including possibly class discovery, without a clear decision on the motion to compel may erase 'the benefits of arbitration,' such as 'efficiency, less expense, and the like,'" that Schmidt "contend[s] the parties contracted for." *Sarah Car Care v. LogistiCare Sols.*, 2023 WL 5378845, at *2 & n.13 (3d Cir. Aug. 22, 2023) (unpubl. op.) (quoting *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023)). Contrary to Plaintiff-Appellants' speculation, the permissible scope of discovery in federal court and arbitration is not the same. Unlike in district court proceedings, under the JAMS employment arbitration rules applicable to Plaintiff-Appellants' Distribution Agreements, the parties would "cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information … relevant to the dispute or claim," each party would be limited to one deposition of an opposing party or an individual under the control of the opposing party absent further agreement or leave of the arbitrator, and any third-party discovery would require "approval of the [a]rbitrator." *See* JAMS Employment Rules, R. 17(a)-(b), (e) (https://www.jamsadr.com/rules-employment-arbitration) (last accessed Jan. 26, 2026).

## CONCLUSION

Because Schmidt's impending certiorari petition will raise substantial questions the Supreme Court has not yet resolved, and because good cause exists to

10

preserve the status quo pending its review, the Court should stay issuance of the mandate.

Dated:  New York, NY
             January 27, 2026

LITTLER MENDELSON, P.C.

By:/s/ *William J. Anthony*
900 Third Avenue
New York, NY 10022
Telephone: 212.583.9600
wanthony@littler.com

Joshua B. Waxman
815 Connecticut Avenue, N.W.
Suite 400
Washington, DC 20006
Telephone: 202.842.3400
jwaxman@littler.com

Michael S. McIntosh
1800 Tyson s Boulevard,
Suite500
Tysons Corner, VA 22102
Telephone: 703.442.8425
mmcintosh@littler.com

Robert F. Friedman
2001 Ross Avenue
Suite 1500
Dallas, TX 75201-2931
Telephone: 214.880.8100
rfriedman@littler.com

***Attorneys for Defendant-Appellees***

11

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 5, 27(d)(2)(C), and 32(a)(7)(B), and Local Rule 27.1, I hereby certify that this brief contains 2,526 words, excluding the parts of the brief exempted by Rule 32(f), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2508 14-point size Times New Roman font.

Dated: January 27, 2026

By: */s/ William J. Anthony*
900 Third Avenue
New York, NY 10022
Telephone: 212.583.9600
wanthony@littler.com

***Attorney for Defendant-Appellees***

12